**Anthony TEDESCO, Plaintiff,**

v.

**Micheal JOHNSON, R.L. Holmes, David Tremmel, Brian Thatcher, Jr., D.C. Davis, Raymond Welch, Maryellen Berthiaume, Defendants.**

No. 8:95–CV–1789–T–17E.

United States District Court, M.D. Florida, Tampa Division.

Nov. 7, 2000.

Anthony Tedesco, Lake Butler, FL, pro se.

Adrian Joseph Musial, Jr., A.J. Musial, Jr., P.A., Joseph Hwan–Yul Lee, Office of the Attorney General, Tampa, FL, for R.N. Berthiame, Micheal Johnson, R.L. Holmes, David Tremmel, Brian Thatcher, D.C. Davis, Raymond Welch, in their individual capacities, Maryellen Berthiaume, defendants.

## ORDER

KOVACHEVICH, District Judge.

*Pro se* prisoner Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983.

In his complaint, plaintiff claims that:

1. On June 20, 1993, at about 10:15 a.m., Plaintiff seriously injured his back doing squats, a weight lifting exercise, at Zephyrhills Correctional Institution (Zephyrhills).

2. Suffering excruciating back pain, pain that radiated down both legs, and barely being able to walk due to the top of his left foot becoming increasingly numb, Plaintiff immediately reported to Zephyrhills Medical Clinic, located at the prison and declared a Medical Emergency.

3. Upon arrival at the Clinic, Plaintiff spoke to Defendant Berthiame, and in great detail described the injury and the symptoms he was experiencing.

4. Defendant Berthiame gave Plaintiff some Ibuprofen and had him sit on a heating pad for twenty minutes.

5. When Plaintiff asked if he could get a Lay–In until he could see a doctor, Defendant Berthiame, with a hostile attitude, stated that he would not be placed on the list to see the doctor, thus Defendant Berthiame did deny Plaintiff access to the doctor, and was not interested in Plaintiff's health enough to take even minimal steps to guard against the possibility that the injury was severe.

6. Defendant Berthiame is a Registered Nurse at Zephyrhills responsible for handling Medical Emergencies and making referrals to the doctor. She is sued in her individual capacity.

7. On information and belief, when a prisoner is injured the proper prison protocol is to provide prisoner with a Medical Excuse from all work assignments until examined and cleared for work by a doctor.

8. Defendant Berthiame next proceeded to order Plaintiff to work at his assigned job in Food Service over his vociferous objections of severe pain.

9. On information and belief, when a prisoner refuses to work, he is subject to disciplinary action including the loss of gain-time and being placed in Disciplinary Confinement.

10. At that time, Plaintiff's job responsibilities in Food Service included lifting heavy metal containers of food, bending over, and prolonged standing, all of which aggravated his acute condition and intensified his pain.

11. Over the course of the next few days Plaintiff's acute condition became worse. The pain was severe and unrelenting in his lower back and legs, the muscles of the top of his left foot were completely numb which affected his walking, so he subsequently declared three Medical Emergencies, but each time was intentionally denied any Medical Treatment, and was treated as if he was a nuisance.

12. On information and belief, when a prisoner declares a medical Emergency and is denied, no written record of it is documented.

13. On July 1, 1993, Plaintiff retained Baya Harrison III, an Attorney experienced in prisoner issues, to intervene on his behalf over the intentional denial of Medical Treatment Plaintiff was receiving for his acute condition.

14. On or about July 14, 1993, Attorney Harrison visited Petitioner at Zephyrhills, and told him he would handle the

case, and that any more visits to the prison Medical Clinic were unnecessary. This did ultimately result in a substantial delay of any additional complaints by Plaintiff to the Medical Department.

15. On August 3, 1993, Attorney Harrison again visited Zephyrhills and spoke to Defendant Tremmel about the denial of Medical Care and a job change for the Plaintiff due to his serious spinal injury.

16. Later that same day Attorney Harrison met with the Plaintiff but Attorney Harrison was ultimately unsuccessful in obtaining any Medical Care for the Plaintiff.

17. Defendant Tremmel is a classification Officer responsible for the inmates assigned to him generally and for changes in job assignments. He is sued in his individual capacity.

18. On August 9, and again on August 11, 1993, Plaintiff's father, William A. Tedesco, telephoned Zephyrhills Correctional Institution, and spoke to Defendant Holmes about the Plaintiff's denial of medical Care and a job change due to his serious injury but Defendant Holmes failed to act on this, as Plaintiff still received no treatment.

19. Defendant Holmes is the Superintendent of Zephyrhills Correctional Institution, responsible for the care and custody of all prisoners there. ·He is sued in his individual capacity.

20. On September 9, 1993, Plaintiff filed a Medical Grievance, responded to by Defendant Johnson, and reviewed and signed by Defendant Holmes, outlining his serious injury, lack of adequate treatment and a job assignment that aggravated his acute condition. Plaintiff mistakenly reported injury date as July 13, 1993. The Grievance was denied September 15, 1993, by Defendants Johnson and Holmes.

21. Defendant Johnson is a Correctional Sergeant at Zephyrhills responsible for answering Grievances. He is sued in his individual capacity.

22. On September 23, 1993, Plaintiff appealed the Grievance, responded to by Defendant Thatcher and reviewed and signed by Defendant Davis, again outlining his injury, a denial of treatment, and a job that aggravated his condition. The Grievance was denied 10/11/93 by Defendants Thatcher and Davis.

23. Defendant Thatcher is the Chief Health Officer at Zephyrhills responsible for all Medical Care generally and in making changes in job assignments for Medical reasons. He is sued in his individual capacity.

24. Defendant Davis is the Assistant Superintendent of Zephyrhills responsible for Medical Care generally and for making changes in job assignments. He is sued in his individual capacity.

25. After an unreasonable, unnecessary, and intentional delay of 116 days, which caused the Plaintiff a great deal of needless pain, suffering, and mental anguish, on October 14, 1993, Plaintiff finally was seen by Defendant Thatcher. He ordered a consultation with a specialist.

26. At this time, Defendant Thatcher issued Plaintiff a Light-duty pass, but his job responsibilities did not change in any way and still aggravated his acute condition.

27. On October 17, 1993, Plaintiff wrote a request informing Defendant Welch that his light-duty pass was not being honored.

28. Defendant Welch responded to this request stating that the light-duty pass only restricts holder from lifting weights of twenty pounds or more, but Plaintiff was routinely lifting weights of 20 lbs or more every shift he worked. Thus, Defendant Welch failed to ensure that Plaintiff's valid medical pass was being honored by denying Plaintiff's request.

29. Defendant Welch is the Food Service Director at Zephyrhills responsible for all Food Service operations. He is sued in his individual capacity.

30. On October 27, 1993, at the Central Florida Reception Center in Orlando, Plaintiff was examined by Dr. Robla, an

Orthopedic Surgeon, who ordered a C–T Scan. The response to a July 6, 1994, Medical Grievance was incorrect in that a M.R.I. test was not done at this time, it was done at a later date.

31. On November 28, 1993, when Dr. Robla discussed the results of the C–T test at the C.F.R.C., Plaintiff finally learned of the damage caused by the injury, which ·were two herniated disks which would require major back surgery to repair.

32. Plaintiff filed numerous complaints requesting a job change which was finally granted on 01/10/94, after an unreasonable and unnecessary delay of 212 days at a job that aggravated his acute condition and intensified his back and leg pain. Plaintiff's job was changed to Inside Work Squad.

33. An E.M.G., which is a nerve conduction test, and a M.R.I. test, ordered by a Neurologist, in addition to a Myelogram (spinal Tap) test ordered by a Neurosurgeon later in 1994, finally pinpointed Plaintiff's injury to two severely herniated disks on the right and left sides of his lower spine.

34. Plaintiff filed numerous Medical Grievances directly related to his spinal injury to ensure that the Specialist orders would be carried out.

35. The effects of the denial of Medical care for 116 days coupled with being forced to work at a job that aggravated Plaintiff's acute condition for 212 days, are having to suffer from intense lower back pain that never goes away and is continually getting worse, the permanent loss of function of my left foot that effects my walking ability, sciatic pain that radiates down both legs, all of which started from the date of injury into the present, lost the ability to enjoy life in a manner accustomed to, and further caused great mental and emotional pain, anguish, and suffering, in addition to loss of all Constitutional Rights described in this complaint, loss of ability to general future earnings.

Plaintiff claims that:

3. The actions of defendant Berthiame in intentionally denying Plaintiff access to the Doctor for his serious spinal injury and acute pain, constituted deliberate indifference to his serious Medical needs in violation of the Eight Amendment and further denied Plaintiff the Due Process of Law in violation of Fourteenth Amendment to the United States Constitution.

4. The actions of Defendant Berthiame of intentionally ignoring Plaintiff's complaints of substantial pain and forcing him to work at a job that aggravated his condition, constituted deliberate indifference to the Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

5. The failure of Defendants Johnson, Holmes, and Tremmel after being made aware of and disregarding Plaintiff's serious injury and significant pain, to intentionally deny him his Right to Adequate Medical Care, constituted deliberate indifference to the Plaintiff's serious Medical needs in violation of the Eighth Amendment to the United States Constitution.

6. The failure of Defendants Johnson, Holmes, Thatcher, Davis and Tremmel· after being made aware of and disregarding Plaintiff's serious injury and significant pain, by intentionally failing to remove him from a job that aggravated his condition constituted deliberate indifference to the Plaintiff's serious Medical needs in violation of the Eighth Amendment to the United States Constitution.

7. The action of Defendant Welch after being made aware of and failing to ensure that Plaintiff's valid Medical Pass was being honored, by forcing him to do inappropriate work that aggravated his condition, constituted Deliberate Indifference to the Plaintiff's serious Medical needs in violation of the Eighth Amendment to the United States Constitution.

As relief, Plaintiff seeks a declaratory judgment and compensatory and punitive damages.

On July 9, 1996, the Court denied Defendants' motion to dismiss. Defendants had alleged they were entitled to qualified immunity. Defendants appealed and, on September 22, 1997, the ruling was affirmed by the United States Court of Appeals for the Eleventh Circuit.

On June 28, 1999, Defendants filed a motion for summary judgment (Doc. No. 78). On July 19, 1999, Plaintiff filed a brief in opposition to Defendants' motion for summary judgment and a declaration in support of the memorandum (Doc. Nos.79, 80). On November 29, 1999, the Court ordered Defendants to respond to Plaintiff's claim that although he was given a light-duty work pass, his job duties did not change, even when he complained that the duties were aggravating his condition; and that Plaintiff was not given a job change until January 1994, almost seven months after his injury (Doc. No. 91). On December 21, 1999, Defendants filed the Court-ordered supplement to the motion for summary judgment (Doc. No. 93).

On January 21, 2000, the Court instructed Plaintiff on the requirements of Rule 56, Federal Rules of Civil Procedure, and allowed Plaintiff 20 days to supplement his response to Defendants' motion for summary judgment (Doc. No. 99). The Court granted numerous motions by Plaintiff for extensions of time to file the response, the latest of which expired October 30, 2000. As of the date of this order, Plaintiff has not filed a supplemental response to Defendants' motion for summary judgment.

### Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case.' " *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence[1] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. 2505. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .

---

1. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element material to that party's case so as to create a genuine issue for trial.

Plaintiff, as the non-moving party, has failed to meet his burden. No genuine issues of material fact remain, and Defendants are entitled to summary judgment.

## Medical Claims

■ The standard for prisoner claims of medical mistreatment is well-established. A prisoner must allege and show that officials acted with deliberate indifference to his medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (footnote omitted). See *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir.1995).

To survive Defendants' motion for summary judgment, Plaintiff Tedesco is required to produce evidence sufficient to create a genuine issue of material fact about whether Defendants (1) had subjective knowledge of Plaintiff's serious medical condition, and (2) were deliberately indifferent to that condition. See *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir.1997).

■ A delay in treatment can, depending on the circumstances and the length of the delay, constitute deliberate indifference. *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir.1994). Therefore, Plaintiff must show sufficient evidence to create a material issue of fact about whether Defendants knew of Plaintiff's serious medical condition and, intentionally or with reckless disregard, delayed treatment. See generally, *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986)(to establish that health care provider's acts constitute deliberate indifference to serious medical need, treatment must be so grossly incompetent, inadequate, or excessive as to shock conscience or to be intolerable to fundamental fairness).

■ An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d at 393–94. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188–90 (11th Cir.1994).

■ "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. 285. "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107, 97 S.Ct. 285.

In *Campbell v. Sikes*, 169 F.3d 1353, 1363–64 (11th Cir.1999), the Eleventh Circuit reviewed the law relative to the meaning of deliberate indifference. The *Campbell* Court pointed out that, in *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the Supreme Court explained that the Eighth Amend-

ment applies only to punishment, and that prison conditions are only punishment if a mental element of punitive intent is shown:

> The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify.

*Campbell v. Sikes,* 169 F.3d at 1363.

■ The *Campbell* Court stated that: Although the very imposition of a certain term in prison is punitive, the punitive purpose of the sentence itself does not convert every attribute of the place of incarceration into a punishment subject to Eighth Amendment scrutiny. Thus, conditions of confinement violate the Eighth Amendment only if they (1) rise to the level of a "serious" deprivation; and (2) result from the official's "deliberate indifference." *Id.* at 297–99, 111 S.Ct. 2321, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271. *Wilson* and subsequent cases refer to these two required elements as an "objective component" scrutinizing the alleged deprivation and a "subjective component" examining the official's mental intent.

*Campbell v. Sikes,* 169 F.3d at 1363.

■ Furthermore, *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), defined the standard of proof of subjective mental intent required to show deliberate indifference:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does

not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837–38, 114 S.Ct. 1970.

Under *Farmer,* liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk. *Id.* at 837, 114 S.Ct. 1970. Proof that the defendant should have perceived the risk, but did not, is insufficient. *Id.* at 838, 114 S.Ct. 1970; *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) ("There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not ....'") (quoting *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970). Thus, the official must have a subjectively "'sufficiently culpable state of mind.'" *Cottrell,* 85 F.3d at 1491 (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970). This "requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson,* 501 U.S. at 297, 111 S.Ct. 2321).

■ Finally, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *See Massey v. Hutto,* 545 F.2d 45 (8th Cir.1976).

■ In the present case, the record shows that Defendant Berthiame, in good faith, reasonably believed Plaintiff to have suffered only from a possible lower back strain, for which Plaintiff received immedi-

ate medical treatment on June 20, 1993, with specific directives to return to the medical facility if his condition worsened. (Defendants' Exhibits 001, 002, 004 to Doc. No. 78). The record shows that from June 20, 1993, the date of the initial injury and complaint, through September 1993, Plaintiff did not complain about his back injury. Plaintiff states that he retained an attorney, Baya Harrison, in July 1993, and that Harrison advised Plaintiff not to seek medical care for his back injury. Plaintiff states that Attorney Harrison's actions "did ultimately result in a substantial delay in any additional complaints by Plaintiff to the Medical Department." Plaintiff's failure to seek medical care based on his attorney's advice did not create liability for Defendants. Since Plaintiff did not seek medical care, Defendants cannot be faulted for failing to respond to Harrison's questions relative to Plaintiff's medical condition.

Plaintiff also states that, on August 9 and August 11, 1993, his father telephoned the institution inquiring about Plaintiff's medical care and job change. At that time, Plaintiff had not sought additional medical care for his back injury and Defendants cannot be faulted for failing to respond to Mr. Tedesco's inquiry.

On August 24, 1993, Plaintiff sought medical care for an unrelated problem, without any complaint about his back. (Defendants' Exhibit 002 to Doc. No. 78)

Although Plaintiff claims that he sought medical attention prior to September 1993 by declaring medical emergencies, no documentation substantiates his alleged efforts. Plaintiff claims that no documentation is made when the health care provider determines that there is no medical emergency. However, the affidavit of Karen Stotsky, Senior Registered Nurse Supervisor at Zephyrhills Correctional Institution, refutes Plaintiff's claim. Nurse Stotsky states that all claims of medical emergencies are recorded, even if the health care provider subsequently determines that there is no urgent medical condition. (Affidavit of Karen Stotsky, Doc. No. 31)

In September 1993, Plaintiff began several administrative procedures with regard to the adequacy of his medical care. However, nothing in the record suggests that he sought any medical attention with regard to his back subsequent to the initial treatment on June 20, 1993, and prior to the administrative procedures in September 1993.

After he sought medical treatment, Plaintiff was examined by a series of specialists and received extensive medical tests to determine the nature and extent of his injuries. First, Dr. Robla, a specialist, examined Plaintiff on October 27, 1993. Pursuant to Dr. Robla's recommendation, a cat scan and an M.R.I. were administered on November 18, 1993, Dr. Robla saw Plaintiff on November 18, 1993. Dr. Robla and Dr. Pinelles examined Plaintiff again on February 14, 1994. Subsequently, Dr. Pinelles examined Plaintiff on March 4, 1994. An EMG test was administered on April 25, 1995, pursuant to Dr. Pineless' recommendation and a neurologist examined Plaintiff on May 25, 1994. (Defendants' Exhibit 003 to Doc. No. 78) Plaintiff was advised throughout as to his options for treatment. (Defendants' Exhibit 002 to Doc. No. 78)

Defendants filed the affidavit of David L. Thomas, M.D., J.D., in support of their motion for summary judgment. Dr. Thomas, who was the Acting Assistant Secretary of Health Services for the Florida Department of Corrections, stated:

I have reviewed the materials on the treatment of Anthony Tedesco, an inmate at Zephyrhills Correctional Institution during 1993. Records reflect that on June 20, 1993, inmate Tedesco noted pain in his back following the lifting of weights. At this time, he was evaluated and felt to have lower back strain. Mr. Tedesco do not return to medical for either sick call or follow-up, though Mr. Tedesco did come in for an unrelated problem on August 23, 1993. Several grievances were filed in September of 1993.

Anthony Tedesco, in September of 1993, was placed on light duty and an appointment for an orthopedic specialist was made. He was seen in November and determined to have two herniated disks. The patient was offered either conservative treatment or surgery. With the guidance of the surgeon, Mr. Tedesco elected conservative treatment. Mr. Tedesco was then scheduled for further evaluation by the medical department of the institution, its medical consultants, an independent orthopedist, and an independent neurologist.

Mr. Tedesco's care was within the standards of care of both the general medical community and the correctional medical community. Mr. Tedesco's care was neither indifferent nor negligent. Indeed, nothing in the initial complaint, to wit, pain in Mr. Tedesco's back after lifting weights, reasonably suggested that Mr. Tedesco had herniated disks, as opposed to a back strain. Moreover, Mr. Tedesco's failure to return to medical sick call for his back, from June though August 1993, further supported the initial opinion that Mr. Tedesco had nothing more than a back strain. Upon discovery of the herniated disks, however, Mr. Tedesco was treated promptly and professionally, with options for treatment, with medical consultation. Upon Mr. Tedesco's election not to have surgery, the Florida Department of Corrections, through its agents, including but not limited to the individual Defendants herein, enabled Mr. Tedesco to continue to have medical evaluations to monitor and treat his situation.

Based on such facts, there is no indication that the Florida Department of Corrections, or any of its agents, acted negligently or willfully disregarded Mr. Tedesco's medical condition. Specifically, as the initial opinion about Mr. Tedesco's condition (that Mr. Tedesco suffered only from a strain in his back) was reasonable, notwithstanding the subsequent correction, the treatment of Mr. Tedesco thereafter could not constitute a deliberate indifference to his medical needs, since his exact medical condition was not yet known. Upon discovery of the herniated disks, however, the treatment was appropriate in light of the discovery of such information.

Furthermore, the standards for correctional health care and the policies and practices of the Florida Department of Corrections provide for wide discretion in the treatment of inmates by the individual health care providers. As such, the conservative approach of the individual health care providers, including the Defendants herein, was not a violation of any policy or practice of the Florida Department of Corrections. Indeed, the conservative treatment of Mr. Tedesco, under the facts known in June through September 1993, was proper under general medical standards.

In his affidavit, Dr. Lutz H. Schlicke, who has a speciality in orthopedic medicine and, stated:

I have reviewed the materials on the treatment of Anthony Tedesco, an inmate at Zephyrhills Correctional Institution, from 1993 through 1995. Records reflect that on June 20, 1993, Mr. Tedesco noted pain in his back following the lifting of weights. At this time, he was evaluated and felt to have lower back strain. Mr. Tedesco did not return to medical for either sick call or follow-up, though Mr. Tedesco did come in for an unrelated problem on August 24, 1993.

Anthony Tedesco, in September of 1993, was placed on light duty and an appointment for an orthopedic specialist was made. He was seen in November and it was suspected that Mr. Tedesco may have two herniated disks. The patient was offered either conservative treatment or surgery. With the guidance of the surgeon, Mr. Tedesco elected conservative treatment. Mr. Tedesco was then scheduled for further evaluation by the medical department of the institution, its medical consultants, an independent orthopedist, and an independent neurologist.

Mr. Tedesco's care was within the standards of care of both the general medical community and for orthopedic medicine specifically. In this regard, it was reasonable for the initial treating health care provider, Nurse Berthiame, to believe that Mr. Tedesco suffered from nothing more than a lower back strain on June 20, 1993. The reasonableness of this conclusion is supported by the facts that: (1) Mr. Tedesco's complaints did not suggest anything more serious than a back strain; and (2) the apparent cause of the injury was from lifting weights (which results much more commonly in a back strain than in herniated disks). Furthermore, Mr. Tedesco's failure to return to medical sick call for his back, from June through August 1993, further supports the initial belief of a back strain.

Upon suspicion that Mr. Tedesco had two herniated disks, in or about November 1993, the treatment of Mr. Tedesco was proper and within the standards of both general medical practice and orthopedic medical practice. Specifically, Mr. Tedesco was properly advised on his treatment options, for which he elected a conservative treatment to see if the herniated disks would heal by themselves as opposed to surgery. The subsequent treatment and monitoring of Mr. Tedesco's condition was medically sound, especially in light of his election to pursue a more conservative course of treatment.

Finally, the delay, from June 1993 through November 1993, in changing the diagnosis from a back strain to possibly herniated disks, was not unreasonable under the circumstances. This is especially true when considering the Mr. Tedesco did not return to sick call for his back anytime after June 20, 1993, notwithstanding the directives to do so, and when considering that in September 1993, Mr. Tedesco was issued a light duty work pass, pending an orthopedic examination. Furthermore, it is noted that the nature of the injury initially suspected, a lower back strain, is one which requires an extended period of time to heal.

Based on such facts, there is no indication that the Florida Department of Corrections, or any of its agents, acted improperly with regard to Mr. Tedesco's medical condition.

Plaintiff has not placed documents into the record to show that Defendants' actions relative to his medical care rose to the level of deliberate indifference. Therefore, Defendants are entitled to summary judgment on this issue.

### Job Duties

■ Plaintiff claims that his job duties did not change until almost seven months after his injury, even though he was given a light duty work pass.[2]

Plaintiff Tedesco has failed to show that any delay in changing the job assignment rose to the level of a constitutional deprivation because he has not placed into the record any evidence that he suffered any harm as a result of any alleged postponement of change in his job assignment.

Dr. Schlicke stated, in a subsequent affidavit:

Anthony Tedesco, in September of 1993, was placed on light duty and an appointment for an orthopedic specialist was made. While on light duty, Mr. Tedesco, who worked in food services, was restricted from lifting more than 20 lbs. Mr. Tedesco, instead, engaged in tasks such as serving food to other inmates and cleaning. Mr. Tedesco was seen in November and it was suspected that Mr. Tedesco may have two herniated disks. Shortly thereafter, Mr. Tedesco was reassigned to work in the inside unit.

From the time that the light duty pass was issued until the transfer of Mr. Tedesco to a different job assignment. Mt. Tedesco's tasks in food services would not have aggravated the herniated disks.

---

2. Plaintiff's claim related to his light duty pass and job duties is not raised against Defendants Berthiame or Thatcher, or any other defendant unrelated to food services.

Such is the case because the herniated disks in 1993 were not severe enough such that simple tasks, which did not involve lifting heavy weights (e.g. more than 20 lbs), would have detrimentally effected the herniated disks.

Also, and as noted in my previous affidavit, it was reasonable for the initial treating health care provider, Nurse Berthiame, to believe that Mr. Tedesco suffered from nothing more than a lower back strain on June 30, 1993. The reasonableness of this conclusion is supported by the facts that: (1) Mr. Tedesco's complaints did not suggest anything more serious than a back strain; and (2) the apparent cause of the injury was from lifting weights (which results much more commonly in a back strain than in herniated disks). Furthermore, Mr. Tedesco's failure to return to medical sick call for his back further supports the initial belief of a back strain.

Therefore, and from June 1993 through September 1993, the Florida Department of Corrections did not act in a medically deficient manner in failing to reassign or change Mr. Tedesco's tasks. In this regard, the failure by Mr. Tedesco to report to sick call with regard to his back, through September 1993, strongly suggested that the back strain was not severe or had perhaps healed itself, such that no changes were necessary with regard to his job assignment. In September 1993, when Mr. Tedesco did complain about his back, the issuance of a light duty pass was medically reasonable (as opposed to a job reassignment), pending an orthopedic evaluation, since there was still no suggestion of anything more serious than a back strain. Upon suspicions of a herniated disk in November 1993, the subsequent transfer of Mr. Tedesco out of food services, in December 1993, was medically proper.

(Defendants' Exhibit F to Doc. No. 93)

Although Plaintiff complains that he continued to lift heavy weights, nothing in the record shows that he was required to life weights heavier than 20 pounds. De-

fendant Welch, who is a Correctional Officer Sergeant at Zephyrhills, stated, in his affidavit:

Over the past sixteen years, I have worked in the Food Services Department at Zephyrhills Correctional Institution, as both a Correctional Officer and as a Food Service Director II. During this time period, and whenever an inmate assigned to work in Food Services had a light duty pass from the Medical Department, it has been the practice and policy of the Food Services Department to honor the light duty pass. Specifically, such an inmate would not be placed on any task requiring him to lift heavy weight (e.g. any amount above 20 lbs. or as specified in the light duty pass). Instead, the inmate would be required to do tasks, such as wiping tables, serving on the serving line, and sweeping the dining area and kitchen. I cannot recall an instance over my sixteen years in the Food Services Department where the light duty pass was not honored in the way just discussed. As such, Mr. Tedesco, if working in the Food Services department with a light duty pass which restricted lifting objects more than 20 lbs, would not have been required to life heavy objets, but instead, would have been assigned to tasks such as sweeping and serving food.

(Defendants' Exhibit E to Doc. No. 93)

Plaintiff Tedesco has not shown that Defendants' actions violated his constitutional rights. The record shows that, from the time that the Florida Department of Corrections arguably had notice of Tedesco's back problems, that is, September 1993, when Plaintiff first complained about his back, until November 1993, when herniated disks were first suspected, to early January 1994, when Plaintiff was transferred from food services, that Plaintiff's duties, in light of the light duty pass, did not aggravate the herniated disks. This is the case because the herniated disks were not so serious that simple tasks, such as cleaning or serving food, would have had

any effect on his injury. Defendants are entitled to summary judgment on this issue.

### Qualified Immunity

Even if Plaintiff could somehow show that Defendants' actions violated his constitutional rights, Defendants are entitled to qualified immunity from Plaintiff's claims for money damages against them in their individual capacities.

Qualified immunity bars claims for money damages against government actors sued in their individual capacities "if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Determining "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action," *Anderson v. Creighton,* 483 U.S. 635, 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. at 819, 102 S.Ct. 2727).

Under the facts of the present case, the Court cannot say that Defendants' actions were not objectively reasonable. Plaintiff Tedesco has not shown that reasonable officials would have known that the complained of conduct violated a clearly established constitutional right. *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983).

Accordingly, the Court orders:

1. That Plaintiff's request for a declaratory judgment is denied.

2. That Defendants' motion for summary judgment (Doc. No. 78) is granted.

The Clerk is directed to enter judgment for Defendants and to close this case.