Kevin SAUVE, Plaintiff,

v.

Al LAMBERTI, in his official capacity as Sheriff of Broward County, Florida, and; Armor Correctional Health Services, Inc., a Florida corporation, Defendants.

Case No. 07–61575–CIV.

United States District Court, S.D. Florida.

Dec. 1, 2008.

Dion J. Cassata, Cassata & Hanson PL, Greg McNeill Lauer, Gregory M. Lauer, Fort Lauderdale, FL, for Plaintiff.

Richard Thomas Woulfe, Bunnell Woulfe Kirschbaum Keller McIntyre & Gregoire, Daniel Lee Losey, John W. Mauro, Billing Cochran Lyles Mauro & Ramsey PA, Fort Lauderdale, FL, for Defendants.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant Lamberti's Motion for Summary Judgment [DE–28] and Defendant Armor Correctional Health Services' Motion for Summary Judgment [DE–32], filed herein on October 3, 2008. The Court has carefully considered the Motions, the Statement of Facts [DE–29; DE–33], the Notice by Defendant Lamberti of Joinder in Defendant Armor's Motion [DE–31], the Exhibits [DE–30; DE–34], Plaintiff's Response [DE–49], Plaintiff's Statement of Disputed Facts [DE–50], Defendant Armor's Reply [DE–51], Defendant Lamberti's Notice of Joinder in the Reply [DE–52], Defendant Lamberti's Reply [DE–53], and is otherwise fully advised in the premises. For the reasons addressed below, the Court finds that the Motions for Summary Judgment are due to be denied.

### I. BACKGROUND

Plaintiff Kevin Sauve ("Sauve") filed the above-styled action on November 2, 2007 against Al Lamberti, in his official capacity as Sheriff of Broward County, Florida, and Armor Correctional Health Services, Inc., a Florida corporation that provides medical/health care to Broward County Jail prisoners pursuant to a contract. Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, alleging that while incarcerated in the Broward County jail system he was denied access to HIV/AIDS medications. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

Plaintiff was diagnosed with HIV in the early to mid–1990s. [Armor Medical Rec-

ords, page 2; B.H. Intake Data Summary dated 6/29/07]. He was diagnosed with AIDS in 1997 or 1998. [Pl. Dep. 6/4/08, page 88, lines 13–15]. Sauve was arrested on May 1, 2007. He informed Defendants that he had HIV/AIDS, was currently under a doctor's care, and was currently taking medications. The Complaint also indicates that Defendants contacted a friend of Sauve's, who confirmed his HIV-positive status and recited the names of medications directly from his current prescription bottles. Plaintiff was released on July 31, 2007. During his incarceration, Sauve lodged approximately 16 complaints regarding his health, including his lack of AIDS medication. Sauve contends that he was denied any medication for his HIV/AIDS throughout his ninety-plus days of incarceration. As a result, he claims, his health deteriorated irreparably and substantially.

Plaintiff's Complaint alleges violations of the Eighth and Fourteenth Amendments and seeks actual, compensatory, and punitive damages. On January 25, 2008, 247 F.R.D. 703, this Court granted Defendant Lamberti's Motion to Dismiss Plaintiff's Claim under the Eighth Amendment and Defendant Lamberti's Motion to Strike Plaintiff's Claim for Punitive Damages. [DE–16]. The Motions for Summary Judgment address Plaintiff's Claim in Count I against Defendant Lamberti and Count II against Defendant Armor pursuant to 42 U.S.C. § 1983 for violations under the Fourteenth Amendment.[1]

On October 3, 2008, Plaintiff moved for partial summary judgment arguing that his HIV positive/AIDS status constitutes a serious medical need within the meaning of a Section 1983 claim. [DE–35]. Defendants did not dispute this and the Court granted Plaintiff's Motion on October 29, 2008. [DE–47]. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir.2004) (HIV constitutes a serious medical need).

## II. DISCUSSION

### A. Standard of Review

Courts may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party faces the stringent burden of establishing the absence of a genuine issue of material fact before summary judgment may be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When deciding such a motion, a court will not grant summary judgment unless it is clear that a trial is unnecessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If uncertainty exists in regards to the necessity of a trial, the court will resolve any doubts against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The burden of production for a summary judgment motion rests first with the movant. It is the movant that "bears the

---

1. Technically, Plaintiff's claim against Defendant Armor for violations of the Eighth and Fourteenth Amendments remain. However, even Plaintiff acknowledges that the Eighth Amendment claim would not apply, as he was a pretrial detainee and not a convicted inmate. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir.

1985). In his Response, Plaintiff refers to the claims as being brought under the Fourteenth Amendment (p. 8) and refers to his Complaint as "Amended"—though it never was formally amended. Thus, the Court views the Complaint as bringing a count against each Defendant for violations under the Fourteenth Amendment.

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To satisfy this burden, the movant must demonstrate that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Only after the movant has discharged its burden does the burden of production shift to the nonmoving party. If the burden does shift, then the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To meet their burden, the nonmoving party "may not rely merely on allegations or denials in its own pleadings," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### B. Motions for Summary Judgment

■ Defendants filed their instant Motions for Summary Judgment arguing that the evidence fails to support Plaintiff's claims. A prisoner asserting a claim of deliberate indifference to serious medical must present evidence beyond medical malpractice. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also, Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). An inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm, and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. *Faison v. Rosado*, 129 Fed.Appx. 490, 491–92 (11th Cir.2005) (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).

■ A prison official acts with deliberate indifference when he knows the inmate faces a substantial risk of serious harm, yet disregards it by failing to take reasonable measures or provide care. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir.1997); *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir.1989). "Delay in access to medical attention can violate the Eighth Amendment," *Estelle*, 429 U.S. at 104–05, 97 S.Ct. 285, depending on the "nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393–94 (11th Cir.1994); *see also, Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir.2005); *Rogers*, 792 F.2d at 1058. However, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability...." *Adams*

*v. Poag,* 61 F.3d 1537, 1545 (11th Cir.1995) (quoting *Estelle,* 429 U.S. at 107, 97 S.Ct. 285).

■■■ Liability under Section 1983 of a municipality requires the showing of a policy or custom that caused the constitutional violation. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In this way, municipal liability is limited to acts of the municipality versus acts of its employees—respondeat superior liability is not available. *Grech v. Clayton County,* 335 F.3d 1326, 1329 (11th Cir.2003). A private entity contracting with a county to provide medical services for prisoners performs a traditional state function and thus the *Monell* requirement applies to it as well. *Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir.1997).

### 1. Armor's Motion

Armor argues that a prisoner cannot demand particular medical treatment when a physician is exercising medical judgment. Defendant argues that it is recognized, including by one of Plaintiff's treating doctors, Dr. Robert Hunt, that barriers to adherence and compliance must be assessed before an HIV patient is treated with antiretroviral medications. Two known barriers to adherence would include substance abuse and mental health problems. According to Defendant, Plaintiff has a long history of chronic substance abuse and serious mental health problems, as well as being noncompliant with his treatment. The Armor health care providers documented these problems repeatedly during the three months Plaintiff was an inmate. Thus, Armor's HIV specialist, Dr. Bethany Weaver, assessed Plaintiff's barriers and reached the medical judgment that Plaintiff should not receive antiretroviral medications.

■■■ Defendant points to Plaintiff's treating doctor's records, which indicate that from 2001 to 2008, there were multi-ple extended periods of time when Plaintiff was non-compliant with his HIV treatment as there was no record of him receiving any HIV care during those times. Plaintiff also concealed from Dr. Hunt his extensive substance abuse. Defendant also points to its medical records and reports, in which Plaintiff's substance abuse, non-compliance, and mental health problems were chronicled. Defendant argues that the Armor health care providers appropriately assessed Plaintiff's medical situation in light of his barriers to adherence and history of non-compliance and decided not to risk Plaintiff developing a resistance to the medication and thus shortening his life span. In their medical judgment, antiretroviral treatment was not appropriate for Plaintiff at that time. Defendant argues, therefore, that summary judgment is appropriate as the medical care provided to Plaintiff was appropriate and current with medical standards. Defendant also argues that there is no evidence of an unconstitutional custom or policy that would arise to Section 1983 liability.

Defendant Armor further argues that Plaintiff has committed fraud upon the Court by making misrepresentations and concealing information during his deposition. Defendant contends that lying about matters that pertain to damages are grounds for dismissal. Defendant points to various inconsistencies in Plaintiff's Deposition—ranging from whether he experienced chronic diarrhea to his allergic reactions to medication to his employment. Defendant also argues that Plaintiff deliberately misrepresented the extent of his barriers to adherence and compliance with his medication in his deposition. For example, he denied ever having done crack cocaine, whereas medical records indicate that he had experience with cocaine, crack, ecstacy, crystal, and crystal meth. [NB Hosp. Records dated 5/8/06, page 2]. Broward House records also indicate that

Plaintiff told a social worker that he had used crack cocaine and crystal meth and that he thought he had a substance problem. [Broward House Needs Assessment Form dated 10/20/05, page 4].

Plaintiff argues that his prior medical records and reports Defendants are relying upon are not dispositive as they were not aware of this history at the time they denied him treatment. He also points to the statement by his expert, Dr. Sension, that denying antiretroviral treatment to a patient advanced to AIDS, as compared to HIV, was not appropriate. As for the policy or custom of Defendant, Plaintiff argues first that Dr. Weaver was the policymaker with respect to HIV/AIDS care in the Broward County jail system, as she was the one with whom a consult was always required as to ART treatment. Plaintiff points out that the treating doctors and medical officers had to defer to Dr. Weaver and obtain a consult before proceeding. Plaintiff also argues that though Armor receives an increasing amount of funding each year from the Broward Sheriff's Office, its expenditures on HIV medication has declined—decreasing by almost 50% for the three months between May and July of 2007 than the amount spent for the same three-month period in 2006. [DE–50–5; 50–6; 50–750–8]. Plaintiff also points to the increase in complaints allegedly made to the Broward County Public Defender's Office, beginning in June 2007, by inmates not receiving antiretroviral medications, according to the affidavit by Shane Gunderson, Director of Client Services for the Broward County Public Defender [DE–50–4]. Finally, Plaintiff argues that the failure to provide medication for his incarceration can constitute a policy or custom.

Defendant Armor argues that Plaintiff was not suitable for antiretroviral medications based on his history. However, as for Plaintiff's history and medical records

prior to his incarceration, the Court agrees with Plaintiff that this is not dispositive on the issue, at least so far as Defendants were not aware of this history at the time of his incarceration. Defendants were aware to a limited extent of Plaintiff's drug problems, mental health issues, and noncompliance, based on what information Plaintiff provided. However, some information was not provided until after Dr. Weaver's decision. For example, the Broward House ALF & Substance Abuse Treatment Screening, in which Plaintiff detailed his substance abuse history was completed on June 29, 2007. [DE–30–10; DE–34–10; DE–30–16; DE–34–16; DE–30–17; DE–34–17; DE–30–18; DE–34–18; DE–30–22; DE–34–23]. The Court finds that this also defeats Defendant's arguments as to the alleged fraud at this time. The inconsistent statements by Plaintiff relate to his prior treatment and records that were not known by Defendant at the time of the decision. Furthermore, as Plaintiff points out, these issues and any pertaining to damages can be appropriately addressed with impeachment at trial.

■ As for the decision made not to place him on medication, Defendant points only to Dr. Weaver's decision in June 2007. There is no indication why Plaintiff was not provided with medication between his incarceration on May 1, 2007 and the decision by Dr. Weaver on June 19, 2007. Furthermore, the Progress Notes dated June 19, 2007, which indicate that Dr. Weaver was consulted on Plaintiff's medication regimen, do not contain any reference to barriers to adherence (Armor Medical Records, DE–30–2; DE–34–2, p. 21). Defendant argues itself as to the medically recognized importance of a patient consistently taking medications. Yet, Plaintiff's records indicate that Dr. Hunt began him on a new regime in January 2007 and that Plaintiff was taking the med-

ications up until his incarceration. Thus, even if the decision not to place Plaintiff on medication on June 19, 2007 was based on medical judgment, there remains a genuine dispute as to why Plaintiff did not receive medication in the first 49 days of his incarceration. *See Farrow v. West,* 320 F.3d 1235, 1246–47 (11th Cir.2003) (claim survived summary judgment given a recognized need for treatment, nature of plaintiff's problems, length of delay in treating, and "the lack of any reasonable explanation for the inordinate delay."). In regards to the actual decision by Dr. Weaver, the Court recognizes, that differences "of opinion over matters of medical judgment does not give rise to a constitutional claim." *Tedesco v. Johnson,* 119 F.Supp.2d 1320, 1327 (M.D.Fla.2000); *see also, White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990). It remains to be determined if Plaintiff's failure to receive antiretroviral medications is simply a difference of medical opinion.

 As for the practice or policy, the Court finds that there remains a genuine dispute precluding summary judgment. Plaintiff's arguments and evidence pertaining to the cost of medication per patient declining presents a genuine issue of material fact as to Defendant's custom. The Court recognizes Defendant's valid contention that this could be attributed to declining medical costs, however, no evidence of such was provided. Thus, the Court is not convinced that a trial is unnecessary and will resolve such doubts against the moving party.

 Defendant's apparent failure to provide medication for 49 days also presents a factual issue that precludes summary judgment on the policy issue. *See McMillan v. Hunter,* 2007 WL 570180, at *5 (M.D.Fla. Feb.20, 2007) (finding that failure to provide prisoner with 39 doses of medication was "sufficient enough for a jury to find [defendant] had a practice that

resulted in Plaintiff's injury") (citing *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018). *Monell* states that a custom may be established even though it has not received formal approval through the body's official decision-making channels. *Monell,* 436 U.S. at 691, 98 S.Ct. 2018 ("Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials.... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.") (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Moreover, "[d]eliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment [and][w]hen the need for treatment is obvious, [by] medical care which is so cursory as to amount to no treatment at all...." *Brown,* 387 F.3d at 1351 (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999) (internal citations omitted)).

### 2. Defendant Lamberti's Motion

 According to Lamberti, it was up to Defendant Armor to provide healthcare and treatment to prisoners per its contract. In addition, Defendant Lamberti argues that he is not liable for the civil rights claim as there has been no showing that an official policy or custom of the Sheriff's Office caused the alleged deprivation. Thus, Plaintiff has failed to show a persistent and widespread practice and a direct causal link between a policy of the Sheriff's Office and the alleged injury.

Plaintiff has only presented evidence as to Defendant Armor and not as to Defendant Lamberti. However, the Eleventh Circuit has indicated that though a county may contract with a private entity to per-

form its obligations, "the county itself remains liable for any constitutional deprivations caused by the policies or customs of the [private entity]. In that sense, the county's duty [to provide medical to inmates] is non-delegable." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 705 (11th Cir.1985); *see also, Morgan–Mapp v. George W. Hill Correctional Facility,* 2008 WL 4211699, at *15 (E.D.Pa. Sept. 12, 2008); *Andrews v. Camden County,* 95 F.Supp.2d 217, 228 (D.N.J.2000). It is only if the constitutional tort was committed by an employee of Armor and not the result of a policy or custom that Defendant Lamberti would not be liable as that would be an impermissible respondeat superior claim against the BSO. *Ancata,* 769 F.2d at 705 n. 8.

### III. *CONCLUSION*

Accordingly, for the aforementioned reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant Armor Correctional Health Services' Motion for Summary Judgment [DE–32] is hereby **DENIED.**

2) Defendant Al Lamberti's Motion for Summary Judgment [DE–28] is hereby **DENIED.**